IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH KENNETH SOWELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  3:17-CV-0307-N |
| | § | |
| CITY OF ROWLETT, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

This Order addresses Defendant City of Rowlett, Texas' (the "City") motion to dismiss [30] and Defendants Chance Fleck and Dale Stevens' motion to dismiss [32] and motion for summary judgment [41]. For the reasons set forth below, the Court denies the City's motion to dismiss. The Court further denies without prejudice Fleck and Stevens' motion to dismiss. The Court grants Plaintiff Joseph Sowell leave to conduct discovery on the topic of qualified immunity in connection with Fleck and Stevens' motion for summary judgment. The Court will consider Fleck and Stevens' motion for summary judgment upon completion of discovery.

## I. BACKGROUND

This case arises from Sowell's arrest by his fellow law enforcement officers. On January 10, 2015, Sowell, an African-American man and 30-year veteran of the Dallas Police Department, got into a physical altercation with his adult son. Sowell alleges that, during

ORDER – PAGE 1

an argument, his son engaged in unwanted and offensive physical contact with him in an effort to leave the family home. Sowell then defended himself from his son's assault. Sowell's son called the Rowlett Police Department, who sent Defendants Fleck, Stevens, and Jeff Carey (collectively, the "Officers," and together with the City, "Defendants") to Sowell's home to investigate the dispute.

When the Officers arrived at Sowell's home, Carey informed Sowell that their job was to determine who "initiated" the confrontation and who was the "primary aggressor." Sowell, his wife, and his son – who had originally called law enforcement – each told the Officers that Sowell's son initiated the physical altercation, and that Sowell had merely responded to the unwanted contact. Carey appeared to understand this information. At one point, he told Sowell that Sowell's son had "walked through" him, thus apparently admitting that Sowell's son had initiated the fight. Nevertheless, Carey and Fleck then informed Sowell that they planned to arrest him.

At that point, Sowell realized that Stevens, a law enforcement supervisor, was in his home. Sowell explained to Stevens that his son had initiated the unwanted contact and that he had merely acted in self-defense. Sowell then asked Stevens to explain why, despite their knowledge that Sowell had acted only in self-defense, the Officers still intended to arrest him. Stevens responded only that "it will be in the report." When Sowell pressed Stevens for further explanation, Stevens simply stated that the Officers were arresting Sowell "because [he] said so." The Officers then arrested Sowell.

The Dallas County District Attorney's Office, however, declined to prosecute Sowell due to lack of evidence. Nevertheless, the Dallas Police Department's Internal Affairs Division ("IAD") still investigated Sowell because he had been arrested. During the IAD investigation, Carey and Fleck told an IAD investigator that they felt "really bad" about arresting Sowell. They then told the investigator that they had arrested Sowell because Stevens told them to do so. For his part, Stevens refused to speak with IAD investigators.

Sowell filed suit in the Dallas County 193rd District Court on January 9, 2017. Defendants removed the suit to this Court on February 2, 2017 on the basis of federal question jurisdiction [1]. On February 27, 2017, Sowell amended his complaint [16]. Sowell now asserts a Fourth Amendment false arrest claim and a Fourteenth Amendment equal protection claim.

## II. THE COURT DENIES THE CITY'S MOTION TO DISMISS

The City now moves to dismiss Sowell's amended complaint [30]. The Court denies the City's motion.

### A. The Rule 12(b)(6) Legal Standard

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well pleaded facts as true and construes the complaint in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. (citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  However, a court may also consider documents outside of the pleadings if they fall within certain limited categories.  First, a "court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Second, a "written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding."  *Ferrer*, 484 F.3d at 780.  Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'"  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir.

2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citations omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "the district court took appropriate judicial notice of publicly-available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### *B. Sowell Has Sufficiently Pleaded Violations of His Constitutional Rights*

The City moves to dismiss, arguing that Sowell has failed to sufficiently plead violations of his constitutional rights. The Court disagrees.

*1. Sowell has stated a Fourth Amendment claim.* – Sowell first asserts that the Officers falsely arrested him in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. To prevail on a false arrest claim, a plaintiff must demonstrate that the police lacked probable cause to arrest him. *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307 (5th Cir. 2001) (citation omitted) (internal quotation marks omitted).

Here, the City argues that Sowell has failed to plead facts showing that the Officers lacked probable cause to arrest him. But construing the facts in the light most favorable to

Sowell, *see Gines*, 699 F.3d at 816, the Court disagrees. Sowell alleges that, when the Officers arrived at his home, Carey told Sowell that the Officers' job was to determine who "initiated" the confrontation and who was the "primary aggressor." Sowell, his wife, and his son – the very son who called law enforcement in the first place – each told the Officers that Sowell's son had been the primary aggressor. Indeed, it appears that Carey agreed; he told Sowell that his son had "walked through" him. Yet the Officers still proceeded to arrest Sowell. When Sowell asked Stevens for an explanation, he was told only that "it will be in the report" and that the Officers were arresting him because Stevens "said so." Sowell's allegations are "enough to raise [his] right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (citations omitted). The Court thus holds that Sowell has stated a Fourth Amendment false arrest claim.

   *2. Sowell has stated a Fourteenth Amendment claim.* – Sowell next asserts a Fourteenth Amendment equal protection claim. To state an equal protection claim, Sowell must show that the Officers treated him differently than other similarly situated persons on account of his minority status. *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001). Sowell has pleaded sufficient facts to support his claim. As stated above, Sowell has alleged that the Officers arrested him without probable cause because he is African-American. He points to statistics showing that, during 2015 and 2016, City police officers arrested African-Americans far more often than they arrested individuals of other races. Viewing the facts in

the light most favorable to Sowell, *see Gines*, 699 F.3d at 816, the Court holds that Sowell has stated a Fourteenth Amendment equal protection claim.

### *C. Sowell Has Stated a Section 1983 Municipal Liability Claim*

"[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 694 (1978)). An official policy can take the form of "duly promulgated policy statements, ordinances or regulations" or may be "a persistent, widespread practice of City officials or employees, which . . . is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id*. at 579 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

A municipal government may be liable under section 1983 only where the challenged decision "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bryan Co. v. Brown*, 520 U.S. 397, 411 (1997). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citation omitted).

Here, Sowell asserts that racial animus was the real reason for his arrest. He points to the City's annual racial profiling reports from 2015 and 2016 to show that the City has a custom of stopping, searching, and arresting African-Americans at rates far in excess of

overall rates for all racial groups. He further alleges that the City's final policymakers are both aware of and consciously indifferent to this practice, as the City has taken no effective steps to correct the statistical disparities in stop, search, and arrest rates for African-Americans.[1] Sowell argues that this challenged custom is, for all intents and purposes, the same as an officially adopted City policy or a policy approved by the Chief of Police, to whom the City has delegated final policymaking authority. And, as stated above, Sowell sufficiently pleaded violations of his Fourth and Fourteenth Amendment rights.

Viewing the facts in the light most favorable to Sowell, *see Gines*, 699 F.3d at 816, the Court holds that Sowell has sufficiently identified (1) a policymaker, the Chief of Police; (2) a City custom of discriminatory arrests; and (3) violations of his Fourth and Fourteenth Amendment rights that the challenged custom caused. *See Piotrowski*, 237 F.3d at 578. The Court thus holds that Sowell has stated a municipal liability claim and denies the City's motion to dismiss.

### D. The Court Denies without Prejudice Fleck and Stevens' Motion to Dismiss

Fleck and Stevens also move to dismiss Sowell's amended complaint for failure to state a claim upon which relief can be granted and failure to overcome their qualified immunity defense [32]. The Court denies the motion without prejudice and will consider Fleck and Stevens' arguments in the context of their motion for summary judgment [41].

### III. THE COURT DEFERS CONSIDERATION OF FLECK AND STEVENS' MOTION FOR SUMMARY JUDGMENT PENDING FURTHER DISCOVERY

---

[1] Sowell acknowledges that the City promulgated various policies during the years at issue to ameliorate racial profiling, but notes that the arrest rates for African-Americans actually *increased* during those years.

ORDER – PAGE 8

Fleck and Stevens move for summary judgment on Sowell's claims [41]. In response, Sowell moves for leave to conduct discovery regarding Fleck and Stevens' qualified immunity arguments [44]. The Court grants Sowell's motion for discovery. Sowell shall have 120 days from the date of this Order to conduct the requested discovery. Sowell shall then have 21 days from the close of discovery to file a supplemental response to Fleck and Stevens' motion for summary judgment. Fleck and Stevens shall have 14 days from the date on which Sowell files his supplemental response to file a supplemental reply in support of their summary judgment motion.

Signed March 7, 2018.

_____
David C. Godbey
United States District Judge