IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH KENNETH SOWELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-00307-N |
| | § | |
| CITY OF ROWLETT, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendants Chance Fleck, Dale Stevens, and the City of Rowlett, Texas's motions for summary judgment. [41, 50]. For the reasons set forth below, the Court grants Defendants' motions.

## I. ORIGINS OF THE DISPUTE

This case is about the arrest of Plaintiff Joseph Kenneth Sowell. On the evening of January 10, 2015, Defendant Officer Chance Fleck was dispatched to respond to a domestic dispute at Mr. Sowell's residence. On his way there, Officer Fleck changed course to meet the victim, Mr. Sowell's 21-year-old son, Joshua Sowell, at a nearby business. After listening to Joshua's story, Officer Fleck continued on to Mr. Sowell's residence. Defendant Officer Jeff Carey was already there and had finished interviewing Mr. Sowell.

The officers then shared what they had learned. The incident began with an argument between Mr. Sowell and Joshua. Joshua was attempting to leave the home. Mr. Sowell

wanted him to stay. Joshua attempted to leave and Mr. Sowell stepped into his path. An altercation ensued that left Joshua with a cut above his eye.

Officer Fleck then spoke with Mr. Sowell directly, and conferred with Officer Carey a second time. The Defendants ultimately decided that there was probable cause to arrest Mr. Sowell for family violence. Before doing so, they sought the advice of their supervisor, Defendant Officer Dale Stevens. After he agreed there was probable cause, the Defendants arrested Mr. Sowell.

The criminal charges against Mr. Sowell were eventually dropped. Shortly after, Mr. Sowell sued the Defendants in state court, alleging that he was "intentionally and illegally arrested without probable cause because of his African-American race." Pl.'s First Am. Compl. 8, [16] ("Compl."). The case was removed to this Court. Now before the Court are Defendants' motions for summary judgment. [41, 50].

## II. LEGAL STANDARD

### *A. Legal Standard on Motion for Summary Judgment*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of

the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, she "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## B. Legal Standard for Qualified Immunity

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In assessing a defendant's assertion of qualified immunity on summary judgment, reviewing courts determine whether the alleged facts, viewed in the light most favorable to the plaintiff, are sufficient to show that: (1) the defendant violated the plaintiff's constitutional rights, and (2) the constitutional right was clearly established, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Pearson*, 555 U.S. at 201–02. The "inquiry into reasonableness" asks only if *any* reasonable officer could have reached the same conclusion. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 408 (5th Cir. 2007) (citing *Malley*, 475 U.S. at 341). "If reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity." *Id.* Lower courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson*, 555 U.S. at 236.

Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden to demonstrate that it does not apply. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194

(5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). Thus, Mr. Sowell must demonstrate a genuine issue of material fact: (1) that the officers violated his constitutional rights, and (2) that the officers acted in a way no reasonable officer would.

### III. THE COURT GRANTS DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Mr. Sowell asserts both Fourth and Fourteenth Amendment related claims against Defendants Fleck and Stevens. Compl. 12, [16]. Plaintiff also raises a section 1983 municipality liability claim against the City of Rowlett. None of these claims survives summary judgment.

#### *A. Defendants Fleck and Stevens are Protected by Qualified Immunity*

Mr. Sowell claims that his arrest was objectively unreasonable, as no "reasonable, competent Texas peace officer" would have found probable cause to arrest him for family violence. Pl.'s Br. Opposing Mot. for Summ. J. and in Supp. of Pl.'s Rule 56(d) Mot. for Disc. 27-8 [45] ("Pl.'s First Resp."). Mr. Sowell rests this claim on the allegation that Defendants failed to consider evidence that Joshua initiated the contact, and that Mr. Sowell was acting in self-defense. *Id.* The Court respectfully disagrees with Mr. Sowell's allegations.

Body camera footage reveals the dialogue between Officer Fleck and Officer Carey once Officer Fleck arrived at the scene. Contrary to Mr. Sowell's allegations, the video plainly shows that both officers considered whether Mr. Sowell was acting in self-defense:

> Officer Carey. Just trying to clarify with him, when he got physical, was it a reaction to his son trying to get past him or, you know what I'm saying? In his [Joshua's] eyes, he's just trying to get by him. In his [Mr. Sowell's] eyes, was he [Joshua] coming at him? Was it a defense thing? You know. It's really kind of hard to

discern. Now he did say, he said there was a pushing match, and then something about fists flying, and then when I asked him to clarify that, he did not bring up the fist flying.

Officer Fleck. I mean, I hate to go this route, but it looks like we have a family violence issue. Looks like we got a Class A Family Violence on the dad for punching him [Joshua] in the face. Because just as he [Joshua] is trying to push through him to get out of the house, he got punched in the face.

Officer Carey. No, no it does I'm just trying to think more of his [Mr. Sowell's] intent. You know. Was he thinking, oh shit, it's about to be on, now I got to defend myself? Or was it a, you're not leaving, he starts to leave, and I'm gonna hit you anyway. I guess we go talk to him [Mr. Sowell] again.

Officer Fleck. Yeah.

Officer Carey. And did I tell you his [Mr. Sowell's] employment status?

Officer Fleck. Yeah with Dallas PD.

Officer Carey. Yeah.

Officer Fleck. Yeah that's what I'm saying, it sucks we have to go this route but what choice do we have?

Officer Carey. Yeah, well, I just want to verify with him because it is, you know, I just want to verify.

Officer Fleck. I just don't see, you know it is gonna be hard to justify him saying he was defending himself just as this guy is trying to push through him to get out of the house.

Officer Carey. Absolutely.

Officer Fleck. OK, well we will go in here [Mr. Sowell's residence] and talk to him and then if nothing else call Dale and see what he says.

Flash Drive "Fleck body cam at scene," [54]. The video then shows both officers entering the house and records Officer Fleck's conversation with Mr. Sowell. At no point does Mr.

Sowell suggest he acted in self-defense. To the contrary, his account of the altercation was that:

> Josh came out with his backpack and everything else . . . I told him Josh, you're not going anywhere. He tries to walk by me, and I move over. So we bump each other and we start to push each other and fists start swinging . . . Both of us were [swinging fists]. If you want to get family violence, both of us were swinging, both of us was pushing each other.

*Id.* The officers conferred a second time, decided the elements for family violence were met, and called their supervisor, Officer Stevens, to confirm. App. to Defs.' Mot. for Summ. J. 3, [52-1]. Officer Stevens listened to Officer Fleck and Carey's analysis, and concurred that there was probable cause to arrest Mr. Sowell. App. to Defs.' Mot. for Summ. J. 5, [52-2].

Probable cause is not a neatly tied legal concept. Instead, it is "fluid . . . turning on the assessment of probabilities in particular factual contexts . . . ." *Illinois v. Gates*, 462 U.S. 213, 231 (1983). The Defendants listened to all the parties. Contrary to Mr. Sowell's allegation, they considered the possibility that he was defending himself and even expressed some degree of hesitancy in arresting Mr. Sowell. It was not a hasty or rash decision. But based on their impressions of the stories, the parties, and Joshua's injury, they decided that this was most likely not an instance of self-defense and that the elements for family violence appeared to be met.

Whether or not this decision was wrong in hindsight is beside the point. The relevant question is whether *any* reasonable officer would have made the same decision. *Pearson*, 555 U.S. at 201–02. The evidence establishes the affirmative. The Defendants'

expert, Clint McNear, is a former detective with twenty-three (23) years of law enforcement experience. He certainly fits the mold of a reasonable officer. He opined that, given the evidence on the ground the evening of January 10, 2015, a reasonable officer could reach the same conclusion as did Officers Stevens, Fleck and Carey, and that he in fact agreed the officers had probable cause to arrest Mr. Sowell. App. to Defs.' Mot. for Summ. J. 13, (McNear Aff. at 4) [52]. The Court acknowledges that Mr. Sowell – a reasonable officer in his own right[1] – reached a different conclusion. Pl.'s Sowell's App. to Br. Opp. Defs.' Mot. for Summ. J., 5-9 [45-1]. But the unforgiving standard for qualified immunity on summary judgment requires only a debate as to reasonableness: "if reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity." *Zarnow*, 500 F.3d at 407 (5th Cir. 2007) (citing *Malley*, 475 U.S. at 341).

Accordingly, the Court holds that Mr. Sowell has not shown there is a genuine issue of material fact that Officers Stevens and Fleck acted in a way no reasonable officer would. Officers Stevens and Fleck are thus protected by qualified immunity.

### B. No City of Rowlett Policy Caused Harm

Mr. Sowell also sues the City of Rowlett under 42 U.S.C. §1983. To succeed on this theory, Mr. Sowell must "show that (1) an official policy, (2) promulgated by [a] municipal policymaker (3) was the moving force behind the violation of a constitutional right."

---

[1] At all relevant times of this lawsuit, Mr. Sowell was a police lieutenant with the City of Dallas Police Department. He has over thirty (30) years of law enforcement experience.

*Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). "Official policy" for the purposes of section 1983 includes practices that are "so common and well settled as to constitute a custom that fairly represents municipal policy." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)

The policy Mr. Sowell points to is systematic racial profiling by Rowlett police officers during traffic stops that leads to African-Americans being stopped and arrested at a disproportionate rate. Compl. 6. Mr. Sowell further alleges that this profiling is so pervasive that knowledge must be attributed to the City Council, and that this profiling was the driving force behind his arrest in violation of the Fourteenth Amendment. *Id*. at 7.

Even assuming that the alleged profiling constitutes a policy promulgated by a policymaker, Mr. Sowell cannot show that it was the cause of his arrest. The law requires that Mr. Sowell "show direct causation, i.e. that there was a 'direct causal link between the policy and the violation.'" *Alvarez v. Brownsville*, 2018 WL 4441619 at *4 (5th Cir. Sept. 18, 2018) (en banc) (quoting *James v. Harris Cty*., 577 F.3d 612, 617 (5th Cir. 2009)). Mr. Sowell points to a report finding that African-Americans in the Rowlett area get pulled over at a disproportionate rate. But Mr. Sowell's case has nothing to do with a traffic stop. He was arrested at home, as a result of potential family violence. Thus, this policy cannot be fairly said to have been the cause of his arrest.

At best, Mr. Sowell's theory of causation is that the discrimination that allegedly occurs on the road spills over into all arrests Rowlett police officers make. Even this, however, is too tenuous to meet the law's direct causation requirement. *See, e.g., Monell v.*

*Dept. of Social Services of City of New York*, 436 U.S. 658, 661-2 (city's policy forcing pregnant employees to take unpaid leaves of absence before such leaves were medically required caused a class of female employees to take such leave); *ODonnell v. Harris Cty.*, 252 F. Supp 3d 1052, 1150 (county's policy of mechanically relying on predetermined bail schedules caused a class of indigent arrestees to be detained before trial solely because they could not afford the bail, in violation of their constitutional rights). Indeed, it is not as if the City's mechanical application of a uniform policy resulted in Mr. Sowell's arrest. The officers went through their procedures, examined the nuances of the situation, and reached a conclusion that, even if proven wrong in hindsight, was objectively reasonable when made. Thus, Mr. Sowell has not shown a clear causal link between an official policy and his injury. The Court therefore finds that the City cannot be held liable under section 1983.

## CONCLUSION

For the reasons stated above, the Court grants Defendants' motion for summary judgment.

Signed September 25, 2018.

David C. Godbey
United States District Judge